HERBERT CECIL PELLY, Respondent, v. FRANCES S. NAYLOR, et al., Executors, etc., Impleaded, etc., Appellants.

In an action upon a promissory note made by N., defendant's testator, the defense was that the note was given to one G. as part of the purchase price for the right to manufacture and sell certain articles made by a secret process, and that the purchase was induced by and the note was made and delivered in reliance upon fraudulent representations on the part of G. in regard thereto. The proof showed that the alleged representations were made to induce N. to make the purchase, but it appeared that N., not wholly relying upon them, made a conditional contract, which, after reciting them, provided that G. should satisfy the vendees, by actual manufacture of the articles, that his representations were true; that the note, with others to be given for the purchase, were placed in the hands of C., pending the test, to be delivered to G. when it was demonstrated that the representations were true; that the test was made and N. expressed himself as satisfied, directed C. to deliver the note to G., which he thereupon did. Defendants then offered evidence tending to show that G., who alone had the secret of the process of the manufacture, and solely conducted the test, concealed ingredients, mis-stated them, falsely declared the cost, and fraudulently represented qualities, and so perverted the test into a continuation of the original falsehood. This evidence was excluded. *Held*, error, and that it was not necessary for defendants to set forth in their answer the fraud and falsehood in the test so sought to be proved, as it was no part of defendant's case, but was competent to be proved to rebut the evidence produced by plaintiff to meet that case; that the averments in the answer of fraud, inducing the delivery of the note, rendered admissible all the facts tending to show such fraud down to the time of the delivery.

(Argued October 20, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 18, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene H. Pomeroy* for appellant. The burden was on the plaintiff to prove his good faith. The defendants were entitled to show that the note in question was obtained from their testator by fraud and without consideration and the burden was placed upon the plaintiff to establish the fact that he became the holder of the note in good faith, and for value before its maturity, in order to deprive the defendant of the benefit of the defense. (*Pely* v. *Onderdonk*, 40 N. Y. S. R. 650; 1 Daniel on Neg. Inst. (3d ed.) §§ 815, 818; 2 Greenl. on Ev. § 172; *Comrs.* v. *Clark*, 97 U. S. 285; *Collins* v. *Gilbert*, 94 id. 761; *Stewart* v. *Lansing*, 104 id. 505; *Vallett* v. *Parker*, 6 Wend. 622; *Hall* v. *Wilson*, 16 Barb. 551; *Bay* v. *Coddington*, 5 Johns. Ch. 54; *Clark* v. *Gallagher*, 20 How. Pr. 310; *Harger* v. *Worrall*, 69 N. Y. 372; *Hale* v. *Shannon*, 57 Hun, 466; *Hunt* v. *Palmer*, 12 Wend. 523; *Stewart* v. *Small*, 2 Barb. 559; *C. N. Bank* v. *Diefendorf*, 123 N. Y. 191; *F. N. Bank* v. *Green*, 43 id. 298; 1 Danl. on Neg. Inst. 612; Edw. on Bills, 686; *Wilson* v. *Rock*, 58 N. Y. 642; *Seymour* v. *McKinstry*, 106 id. 240; *Hale* v. *Shannon*, 32 N. Y. S. R. 1079; *Nickerson* v. *Ruger*, 76 N. Y. 282; *Vosburg* v. *Diefendorf*, 119 id. 357.) The trial justice erroneously held that Onderdonk and Naylor bore to Naylor himself and to Griffiths substantially the relation of arbitrators, to whom had been submitted the decision of questions pending between them, and upon whose decision both parties had agreed to rely, and that the certificate made by Onderdonk and Naylor was conclusive upon Naylor, and that he could not be permitted to show that Onderdonk and he had been induced to make it through fraudulent representations of Griffiths. (Code Civ. Pro. § 2374; 2 Rand on Com. Paper, § 690; *A. C. S. Inst.* v. *Burdick*, 87 N. Y. 49; *Schumaker* v. *Mather*, 60 Hun, 576; *Smith* v. *Harris*, 44 id. 623; *Dunham* v. *Griswold*, 100 N. Y. 224; *Adams* v. *I. N. Bank*, 116 id. 614.)

*Lucien Birdseye* for respondent. The manner in which this defense has been conducted is such as to show that the

court ought, in its discretion, to award damages at the rate of ten per cent upon the amount of the judgment, for the delay upon this appeal. (Code Civ. Pro. § 3251; *Tisdale* v. *D. & H. C. Co.*, 116 N. Y. 422.)

FINCH, J. This action was brought to recover the amount of a promissory note, made by the defendants' testator, Naylor, payable to his own order and indorsed by him to Thomas Griffiths, who indorsed the same before maturity to the plaintiff. The deposition of the latter, taken in England, was read upon the trial, and in it he testified merely that he took the note for value paid at the time and in good faith. He did not say what that value was, or state the circumstances attending the purchase, but practically swore to a legal conclusion drawn by himself from facts which he and his counsel chose to leave undisclosed. The defense pleaded and sought to be proved was a series of fraudulent representations and acts on the part of Griffiths by which the execution and delivery of the note was induced. Of course, until fraud upon the maker of the note existing at its inception was so far established as to raise a question of fact upon the point, the plaintiff was not bound to show the consideration or circumstances of his purchase, but would become bound to do that whenever the alleged fraud should be sufficiently proved. The burden would then be shifted upon him of showing the facts and circumstances indicating a purchase for value, in good faith and before maturity. But this case never reached that point and could not reach that point because of the adverse rulings of the trial court, which seem to have rested largely upon questions of pleading, and which can only be examined to advantage after a full understanding of the facts.

Griffiths owned or controlled five articles in the nature of paints or enamels, made by a secret process known only to himself and his business associates. The answer alleged and the proof showed that, to induce Naylor and his associates to purchase the right to manufacture and sell the articles, Griffiths represented them to possess a number of very valu-

able qualities; that a plant sufficient for their production could be provided at a cost not in excess of $5,000; and that the cost of the manufactured articles would not exceed certain specified amounts. The evidence shows that Naylor did not wholly rely upon these representations, but made a conditional contract which, after reciting them all, provided that Griffiths should satisfy the vendees by an actual manufacture of the articles in this country that he had correctly represented their qualities and cost, and such vendees thereupon should complete the purchase. Griffiths came to this country to conduct the experiment, which necessarily could only be conducted by one possessing a knowledge of the process and its necessary ingredients. Before doing so, the general arrangement as to the mode and manner of purchase was changed, and took the form of an incorporation composed of Griffiths, Naylor, Onderdonk and some others, to which the processes and formulas of manufacture were to be transferred, in consideration of which Naylor and his associates were, among other things, to deliver to Griffiths three promissory notes, one of which is the note in suit. The new arrangement was put in writing and required that the stock and notes to be given to Griffiths by the purchasers should be placed in the hands of Edward S. Clinch pending the test agreed upon, and to be delivered by him when "it has been demonstrated that said specialties have the qualities respectively ascribed to them in a certain agreement   *   *   *   dated 27th of March, 1889." That was the conditional contract which contained the representations, so that it is quite clear that Griffiths stood at this point still the vendor of the articles upon the representations made, and Naylor and others the intending vendees, but the sale and purchase still depending upon the actual experiment to be made. Griffiths made that experiment, and Naylor and Onderdonk, describing themselves as satisfied, directed Clinch to deliver the notes, which he thereupon did. It is thus quite certain that the note in question was delivered in reliance upon the truth of Griffiths' representations as to quality and cost as demonstrated and confirmed

by his experiment and test, and that the latter was a reiteration and re-affirmance of the original representations in a practical and demonstrative form. But the defendant sought to prove that the original falsehood and fraud was continued in and effectuated by the experiment and test as conducted by Griffiths, and that the agreed demonstration was only a fraudulent repetition of the original falsehoods made effective by the appearance of a demonstration not such in fact and still dependent for its force upon the same representations originally made. To establish this the defendant offered to show and did show that Griffiths made the tests, and that neither Naylor nor Onderdonk took any personal part in them, and then asked who selected the needed ingredients, who mixed them, whether Naylor selected them or examined them, what time intervened between the making of the tests and the authority given to Clinch, upon what the parties relied in giving that authority, what were the statements made by Griffiths upon which Onderdonk relied, whether those statements were false or true, whether their truth was tested, and if so when and what was the result, and other similar questions, all of which were objected to and excluded. They involved an effort to show that Griffiths, who alone held the secret of the process and solely conducted it, concealed ingredients, misstated them, falsely declared the cost, and fraudulently represented qualities, and thus carried into and through the intended demonstration all the vice of the original falsehoods. Why this effort was not permitted to be made is shown in the opinions rendered. The trial judge argued that the notes were delivered by Clinch upon the certificate of Onderdonk and Naylor, and Griffiths had nothing to do with it. But the rejected evidence tended to show that Griffiths had everything to do with it, and perverted what was intended to be a fair and honest test into a continuation of the original falsehood, and so induced the certificate and delivery. The court further held that the element of fraud was eliminated from the case, and that it disappeared just as soon as the agreement and the certificate of Naylor and Onderdonk were produced.

That is true on the face of the papers, but is not true upon
the facts which the defendant offered but was not permitted
to prove. The General Term took a similar view, but sought
to strengthen it by a further suggestion. They said that
the previous negotiations were merged in the final agree-
ment evidenced by the certificate and delivery, which
agreement was complied with by Griffiths; that "there
is no proof in the case showing or tending to show that
any deception was resorted to by Griffiths, or misrepresenta-
tion made by him in making the tests;" which is true only
because evidence to establish such facts was steadily and per-
sistently excluded. The court add that "even if there had
been, the answer does not aver that the same was obtained
from Clinch by fraud or misrepresentation." Let us look into
that. The answer avers not only the representations and their
falsity, but proceeds thus : "And at the time he gave to the
defendant Griffiths the note referred to in the complaint, and
paid to him the money and notes hereinafter referred to
*   *   * . and in all his dealings with defendant Griffiths he
believed and relied upon" the representations "which were at
the time they were made false and untrue." Then the answer
alleges that the changed form of the arrangement was adop-
ted in reliance upon and in the belief in the representations
made, and specially adds, as to the note in suit, these
words : "This defendant, at the time of paying said cash
and of making and delivering said notes and the payment
of said two notes, believing and relying upon the repre-
sentations made by said Griffiths in respect to the said
alleged processes or formulas to the said articles, their use-
fulness and value, and the cost of manufacture, and of the
plant as hereinbefore set forth." The answer thus substan-
tially alleged material representations which were false and
fraudulent, which were intended to and did induce the pur-
chase, and which the defendant relied upon when he made and
delivered the note. That delivery was by Clinch, as the agent
or trustee of the parties, but upon Naylor's order, so that the
answer avers fraud in inducing that delivery, and renders

admissible all the facts tending to show such fraud down to that moment of time.

The criticism of the plaintiff's counsel is that the answer should have pleaded fraud and falsehood in the test, and omits any mention of it or allusion to it; and that fact was made the basis of a severe personal castigation of Clinch, who now represents the defendant, which we deem it but justice to say is excused or justified by nothing in the record before us. The defendant was not at all required to plead the fraudulent conduct of Griffiths in conducting the test. That test was no necessary part of defendant's case as pleaded. It was simply rebutting evidence for the plaintiff. When the defendant had alleged that the note was delivered in reliance upon false representations, the plaintiff, beyond denying their falsity, could and did also say that, at least, Naylor did not rely upon them as he claimed, since he required an actual test or demonstration of their truth, which was made, and with which he declared himself satisfied, and in reliance upon which, and not upon the representations, the note was delivered. That rebutting evidence is very strong and forcible. Unanswered, it is conclusive, but the defendant had the right to answer it if he could, to take the sting out, if that should be possible, to show that what was meant for a fair and honest test and what seemed to be such was in truth a continuation and repetition of the original fraud, carried from words into deeds, and made effectual by concealment, by falsehood, and by carefully planned artifice. Such an answer is very difficult to establish, but we have no right to say that it is impossible or deny to the defendant the opportunity to prove it if he can. The test was to be and was conducted by Griffiths. The secret of the process was his, and what the test proved was still largely dependent upon what he said about it.

The error in the trial seems to have originated in the idea of two separate, distinct and several contracts, one of which was abandoned, and in the other of which no fraud was alleged. We deem that a mistake. There was but one sale and purchase. All that preceded it bore upon and tended to produce

it. It was the result of a single continuous transaction, changed only in form but never in fact or in substance so far as it ended in a sale. We are far from saying that the defendant will be able to break the force of the test with which he expressed himself satisfied, but it was error to rule that he was not at liberty to try, and that the facts were conclusive.

For that reason we are of opinion that the evidence offered was improperly excluded.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.